UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JEFFERY WILLIAM PAUL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:13-cv-00304-JMS-MJD |
| | ) | |
| SUPERINTENDENT, et al. | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Jeffery William Paul was convicted in 1997 in the United States District Court for the Western District of Arkansas of aiding and abetting a homicide in violation of 18 U.S.C. § 1111 and use of a firearm in relation to a crime of violence, robbery, in violation of 18 U.S.C. § 924(c). Mr. Paul filed this habeas corpus petition challenging his convictions and sentence. He argues that he is actually innocent of the crimes for which he was convicted, that he is too mentally ill to be executed, that his indictment was defective, and that his § 924(c) conviction must be vacated because the robbery offense underlying that conviction is not a crime of violence under § 924(c)(3)(A). Most of Mr. Paul's claims are barred by 28 U.S.C. § 2255(e) or fail on the merits. But his § 924(c) claim is properly brought under 28 U.S.C. § 2241 and warrants relief. Accordingly, Mr. Paul's petition for writ of habeas corpus is **GRANTED**, his § 924(c) conviction is **VACATED**, and his death sentence is **VACATED** subject to a retrial on the penalty phase in the United States District Court for the Western District of Arkansas.

1

## I. Background

### A. Summary of Evidence[1]

In late June 1995, Mr. Paul and Trinity Ingle followed Sherman Williams on foot from downtown Hot Springs, Arkansas, to a walking trail in Hot Springs National Park. They took Mr. Williams' wallet and car keys, tied him up with duct tape, and shot him in the head and the shoulder. The shot to the head was fatal. The men then dragged Mr. Williams into the woods and took $98 from his wallet before hiding it under some rocks. They drove off in his car, which was found weeks later in a pit in a remote area of the national park.

In the days following the murder, Mr. Paul confessed to two friends that he had robbed and shot Mr. Williams and taken his car. Trial Tr. 663−70 (Kris Rogers testimony); Trial Tr. 707−11 (Christine LaPaglia testimony). Less than two weeks after the murder, Mr. Paul and his brother Jason left Hot Springs because they had heard the FBI wanted to question them. Trial Tr. 793−94 (Jason Paul testimony). They ended up in Key West, Florida, where Mr. Paul spent most of the next 14 months.

In Key West, Mr. Paul began a relationship with Cindy Wallace and moved in with her in spring or early summer 1996. Trial Tr. 728 (Cindy Wallace testimony). Around the same time, Mr. Paul made a detailed confession to Ms. Wallace about the Hot Springs murder. *Id.* at 728−33. Mr. Paul also confessed to Dan Coughlin, a Key West friend who let Mr. Paul use his birth certificate to create a fake Florida identification card. Trial Tr. 754−56 (Dan Coughlin testimony).

---

[1] Except where noted, this summary is drawn from the Eighth Circuit's opinion affirming Mr. Paul's conviction. *United States v. Paul*, 217 F.3d 989 (8th Cir. 2000) ("*Paul I*"). The Eighth Circuit's discussion of the evidence is consistent with the trial transcripts. *See generally United States v. Paul*, No. 6:96-cr-60022-TLB, dkts. 430-1−430-5 (W.D. Ark.). In this Order, "Trial Tr. _" refers to the trial and sentencing transcripts for Mr. Paul's federal criminal prosecution. *Id.*

The FBI eventually arrested Mr. Paul in August 1996 in Mississippi. During the arrest, Mr. Paul begged officers to shoot him. Trial Tr. 807 (John LaVoie testimony). They did not. Instead, an FBI agent interviewed Mr. Paul, and Mr. Paul confessed to robbing Mr. Williams with Mr. Ingle in Hot Springs in June 1995, though he reported that Mr. Ingle was the only shooter. *Id.* at 810−12.

### B.  Trial and Sentencing

The government charged Mr. Paul with murder in violation of 18 U.S.C. § 1111(a) and use of a firearm during a crime of violence resulting in death in violation of 18 U.S.C. § 924(c)(1) and § 924([j])(1).[2] For the § 924(c) and § 924(j) charge, the indictment alleged that Mr. Paul,

> within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant to Title 18 U.S.C. § 7(3), did knowingly carry and use a firearm, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, to wit: a robbery in the national park, Hot Springs, Arkansas, on or about June 22, 1995. . . .

Dkt. 272-1. The indictment did not further define "robbery." *Id.*

The jury was instructed that "robbery has three essential elements":

[(1)]  that Sherman Williams had in his possession or on his person or presence anything of value.

[(2)]  that the defendant took and carried away anything of value from Sherman Williams by force or violence, and

[(3)]  that the taking occurred within the boundaries of the Hot Springs National Park.

Dkt. 272-2 at 11; Trial Tr. 845. The jury convicted Mr. Paul on both counts. Trial Tr. 912−13.

---

[2] The version of § 924 in effect at the time of Mr. Paul's offenses contained two subsections both labelled § 924(i). The second such subsection set the penalty for use of a firearm during a crime of violence resulting in death. The statute was amended effective October 11, 1996, converting this subsection to § 924(j).

At sentencing, Mr. Paul introduced an audio recording of Mr. Ingle's jailhouse confession. Trial Tr. 1058−1110. In the confession, Mr. Ingle explained that he and Mr. Paul[3] followed an old man into the woods on federal land, robbed him, tied him up, shot him, hid the body, and took his vehicle. Trial Tr. 1061−64, 1068, 1072−77, 1100−09.

The jury recommended a sentence of death, and the judge imposed death sentences on both counts. Trial Tr. 1162−76.

### C.    Appeal and Collateral Attacks[4]

Mr. Paul appealed, and the Eighth Circuit affirmed his conviction and sentence in a 2-1 decision. *Paul I*, 217 F.3d at 1005. The dissenting judge concluded that the jury was erroneously instructed regarding aiding and abetting. *Id.* at 1005−06 (Heaney, J., dissenting).

Mr. Paul filed a collateral attack under 28 U.S.C. § 2255 arguing ineffective assistance of counsel. The district court denied relief and, in the process, found that Mr. Paul was competent to assist counsel both at trial and in his habeas proceedings. *See Paul v. United States*, 534 F.3d 832, 844−51 (8th Cir. 2008) ("*Paul II*").

In August 2013, Mr. Paul filed a pro se petition for writ of habeas corpus in this Court alleging actual innocence. The Court appointed counsel, and Mr. Paul filed an amended petition. This Court stayed proceedings in March 2019 pending the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). The Court then stayed proceedings again in June 2020 to allow Mr. Paul to pursue a successive § 2255 motion based on *Davis*. The Eighth Circuit

---

[3] Mr. Ingle at times refers to the perpetrators as "Andy" and "Bob." *See generally* Trial Tr. 1058−1110. The context makes abundantly clear that Andy and Bob are Mr. Paul and Mr. Ingle. *See* Trial Tr. 933 (defense counsel explaining, "I promise you, you'll know who Bob and Andy are by the time we finish that 41 minutes of tape"); Trial Tr. 1069 (Mr. Ingle explaining, "Bob and Andy represents two certain people that they're . . . tryin' to get caught up in this case.").

[4] This summary does not include Mr. Paul's numerous *pro se* collateral attacks.

summarily denied Mr. Paul's motion for authorization to file a successive motion. *Paul v. United States*, No. 20-2042 (8th Cir. June 29, 2020). The parties have since filed supplemental briefing in this case to address the Supreme Court's decision in *Borden v. United States*, 141 S. Ct. 1817 (2021).

## II.     Limits on § 2241

For a federal prisoner like Mr. Paul, a § 2255 motion is the default vehicle for collaterally attacking his conviction or sentence. But Congress has limited the use of § 2255. A prisoner may bring such a motion only in the court that imposed the sentence being challenged. 28 U.S.C. § 2255(a). And a prisoner may bring only one § 2255 motion unless the court of appeals for the district of conviction determines that the second or successive motion contains

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).

Except when § 2255's remedy is "inadequate or ineffective," courts may not consider a prisoner's § 2241 habeas corpus petition attacking a federal conviction or sentence. 28 U.S.C. § 2255(e). The "inadequate or ineffective" exception applies "[o]nly in rare circumstances." *Light v. Caraway*, 761 F.3d 809, 812 (7th Cir. 2014).

The Seventh Circuit has identified a handful of specific situations where structural problems foreclose effective review in a successive § 2255 motion, thereby opening the door to a § 2241 petition. *See, e.g., In re Davenport*, 147 F.3d 605, 610 (7th Cir. 1998) (where the claim alleges a fundamental defect in the petitioner's conviction and is based on a new retroactive rule of statutory interpretation); *Garza v. Lappin*, 253 F.3d 918, 920 (7th Cir. 2001) (where the claim

is premised on the ruling of an international tribunal issued after the prisoner's first round of §

2255 review was complete); *Webster v. Daniels*, 784 F.3d 1123, 1139 (7th Cir. 2015) (where a

claim relies on new evidence that existed but was unavailable at trial and that shows "that the

Constitution categorically prohibits a certain penalty").

These three cases do not "rigidly describe the outer limits" of the savings clause. *Purkey v.*

*United States*, 964 F.3d 603, 612 (7th Cir. 2020). Still, the savings clause applies only "when a

structural problem in § 2255 forecloses even one round of effective collateral review." *Taylor v.*

*Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002); *see Webster*, 784 F.3d at 1136 (same). The Court will,

where necessary, determine whether Mr. Paul's claims are properly addressed in a § 2241 petition

before reaching the merits of any issue.

### III.    Discussion

Mr. Paul's amended petition alleges that (1) he is actually innocent of murder; (2) he is

ineligible for the death penalty due to severe mental illness; and (3) his § 924(c) conviction must

be vacated because "robbery" is not a crime of violence under § 924(c)(3)(A) and because

§ 924(c)(3)(B) is unconstitutionally vague. *See generally* dkt. 103. The Court addresses each claim

in turn.

#### A.    Actual Innocence

Mr. Paul argues that the Court should vacate his convictions because he can demonstrate

his innocence based on a 2005 declaration from Mr. Ingle. The Court agrees with Mr. Paul that

some procedural vehicle must be available to a person who claims he is actually innocent of a

crime for which he has been sentenced to death. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993)

(assuming "that in a capital case a truly persuasive demonstration of 'actual innocence' made after

trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief

6

if there were no state avenue open to process such a claim"); *In re Davis*, 557 U.S. 952 (2009) (remanding an original habeas corpus petition to the district court for factual findings regarding freestanding innocence claim in capital case). But Mr. Paul's claim is barred by § 2255(e) and, independently, it does not warrant relief on the merits.

Mr. Paul's innocence claim does not satisfy any of the circumstances so far recognized by the Seventh Circuit for satisfying the § 2255(e) savings clause. It comes closest to *Webster*, where the claim at issue relied on new evidence that existed but was unavailable at trial and alleged that "the Constitution categorically prohibit[ed] a certain penalty" for the petitioner. 784 F.3d at 1139. But *Webster*'s holding was based on the premise that "Congress could not have contemplated" the type of claim the petitioner sought to bring in his § 2241 petition when it enacted § 2255. 784 F.3d at 1138.

In contrast, Congress accounted for claims, like Mr. Paul's, alleging actual innocence based on new evidence. *See* 28 U.S.C. § 2255(h)(1) (court of appeals may authorize successive § 2255 motion raising a claim based on "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense"). There is therefore no structural problem that prevented Mr. Paul from raising his actual innocence claim in a § 2255 motion.

And even if a § 2241 petition were the proper vehicle for Mr. Paul's innocence claim, the claim still would not warrant relief. Neither party clearly sets forth the standard by which it believes the Court should assess Mr. Paul's freestanding actual innocence claim, but both parties reference the standard set forth in *Schlup v. Delo*, 513 U.S. 298 (1995). If *Schlup* applied here, Mr. Paul would be required to put forth new reliable evidence unavailable at trial and "show that

7

it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. But *Schlup* does not apply here. While the Supreme Court has not announced a standard for a freestanding innocence claim, it has made clear that any such standard would be more difficult to meet than *Schlup*'s. *See House v. Bell*, 547 U.S. 518, 555 (2006) (freestanding innocence claim would require "more convincing proof of innocence than *Schlup*"); *Dansby v. Hobbs*, 766 F.3d 809, 816−17 (8th Cir. 2014) (same). The Court need not pinpoint the appropriate standard in this case, because Mr. Paul has not even satisfied *Schlup*.

Mr. Paul points to new evidence that was unavailable at trial: a 2005 declaration from Mr. Ingle in which he takes full responsibility for the robbery and murder of Mr. Williams. Dkt. 106-2 at 16−18. In the declaration, Mr. Ingle asserts that the robbery was a complete surprise to Mr. Paul. *Id.* at 16. When Mr. Paul realized what was happening and tried to stop it, Mr. Ingle hinted that he would kill Mr. Paul if he didn't go along. *Id.* at 17 ("I made sure he knew if he put his hands on me again trying to stop me I would have shot him, too, and it would have been two people left up on that mountain.").

But Mr. Ingle's declaration is not reliable and merely impeaches his other statements. It is severely undermined by his recorded jailhouse confession in which he repeatedly stated that both he and his accomplice shot Mr. Williams. *See* Trial Tr. 1068 ("Bob and Andy both did this. . . . So can't neither one of 'em say . . . that he did it, I did it, ya know?"); *id.* at 1072−73 ("Okay, Bob and Andy, you know, they was up there together in the park . . . . Pop, pop, pow. [Slight pause] Pow, pow. [Slight pause] See what I'm sayin' . . . Whenever one did it . . . both did it."); *id.* at 1077 ("Pow, pow! See, whenever, whenever Bob [making cocking of gun sounds] . . . whenever Bob [making cocking of gun sounds again], Andy automatically . . . Pow! . . . You know, they, they work together.").

8

And in contrast to Mr. Ingle's declaration, the trial evidence against Mr. Paul was compelling. Mr. Paul confessed to four different friends at four different times that he robbed and shot Mr. Williams. He fled Hot Springs and evaded the FBI for 14 months. And when he was arrested, he admitted to participating in the robbery, though he denied shooting Mr. Williams himself. Mr. Ingle's declaration, which cannot be squared with his own prior statements, does not outweigh the trial evidence. Mr. Paul has therefore failed to make the required showing for a freestanding actual innocence claim.

### B.     Mental Illness

Next, Mr. Paul argues that he is constitutionally ineligible to be executed due to his profound mental illness. Notably, he does not argue that his mental health at the time of his crime, or even at the time of trial, precluded a death sentence. Such a claim likely would be barred by § 2255(e). Instead, Mr. Paul argues that "his *present* level of mental illness renders him categorically exempt from the death penalty." Dkt. 103 at 45 (emphasis added). He further explains that this "is not a challenge to the trial proceedings, but rather, the execution of [his death sentence] under circumstances that have arisen since the sentence was originally imposed." *Id.* at 45−46.

Mr. Paul compares his condition to someone who is intellectually disabled or a juvenile at the time of the relevant crime. *Id.* at 38−41. But these comparisons are inapt. Both juvenile status and intellectual disability are knowable at the time of trial. *Bourgeois v. Watson*, 977 F.3d 620, 637 (7th Cir. 2020) ("Intellectual disability is a permanent condition that must manifest before the age of 18."). And both juvenile status and intellectual disability make offenders categorically ineligible for a death sentence. So the remedy in those cases is vacatur of the death sentence. *See Roper v. Simmons*, 543 U.S. 551, 578−79 (2005) (affirming vacatur of death sentence for offender

9

under the age of 18 at the time of his crime); *Webster v. Watson*, 975 F.3d 667, 689 (7th Cir. 2020) (affirming vacatur of death sentence for intellectually disabled offender).

Here, in contrast, Mr. Paul concedes that his mental illness was not a barrier to imposing the death sentence. He argues only that his mental illness precludes execution of his sentence at this time. Even if he is correct that mental illness is a barrier to execution—and the Court makes no determination on this issue—this claim is not ripe. Mr. Paul's execution date has not been set. Indeed, there are no executions scheduled for any federal inmates, and the Department of Justice has given no indication that it plans to resume executions anytime soon. Until Mr. Paul's execution is scheduled, any claim challenging the execution of his death sentence—rather than its imposition—is unripe. *Holmes v. Neal*, 816 F.3d 949, 954 (7th Cir. 2016) (citing *Panetti v. Quarterman*, 551 U.S. 930, 946–47 (2007), and *Stewart v. Martinez-Villareal*, 523 U.S. 637, 643 (1998)). The claim is therefore dismissed without prejudice for lack of jurisdiction.

## C.    § 924(c) Conviction

Mr. Paul argues that his § 924(c) conviction must be vacated for two related but distinct reasons. *First*, he argues that "robbery" as charged in his indictment and found by the jury is not an offense "for which [Mr. Paul] may be prosecuted in a court of the United States," 18 U.S.C. § 924(c)(1)(A), so it cannot be a predicate for his § 924(c) conviction. *Second*, he argues that "robbery" as charged in his indictment and found by the jury is not a crime of violence. As explained below, § 2255(e) bars Mr. Paul's first challenge to his § 924(c) conviction. But his second challenge is properly brought in a § 2241 petition, and it warrants relief.

### 1.    Whether the "Robbery" Offense Underlying Mr. Paul's § 924(c) Conviction Is an Offense that May Be Prosecuted in a Court of the United States

In the indictment, Mr. Paul was charged with violating § 924(c) because he "did knowingly carry and use a firearm, during and in relation to a crime of violence for which he may be

10

prosecuted in a court of the United States, to wit: a robbery in the national park, Hot Springs, Arkansas." Dkt. 272-1. The indictment did not include any statutory citation for robbery; nor did it further define the offense. Mr. Paul argues that the abstract "robbery" charged in the indictment is not an offense "for which [he] may be prosecuted in a court of the United States," as required for a § 924(c) conviction. *See* dkt. 234 at 6−8 (describing the "robbery" charged in Mr. Paul's indictment as a "non-offense"). The government argues that the indictment charged Mr. Paul with robbery within the special maritime and territorial jurisdiction of the United States. *See* 18 U.S.C. § 2111 ("Whoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes or attempts to take from the person or presence of another anything of value, shall be imprisoned not more than fifteen years."). While the language of the indictment is somewhat similar to that in § 2111, neither the indictment nor the jury instructions properly set out the elements of that offense.

But this defect cannot be cured here. To the extent the indictment was unconstitutionally defective, Mr. Paul could have raised this claim in a § 2255 motion. *See United States v. Adams*, 814 F.3d 178, 180 (4th Cir. 2016) (vacating guilty plea in § 2255 proceedings based on argument that predicate felony charged in the indictment was not in fact a felony). He cannot raise it in a § 2255 motion now, because he has already completed his § 2255 proceedings and there is no basis for raising the claim in a successive § 2255 motion. *See* 28 U.S.C. § 2255(h). Though an unfortunate reality, the fact that a waived claim cannot be raised in a successive § 2255 motion is not enough to invoke § 2255(e)'s savings clause. *See Montana v. Cross*, 829 F.3d 775, 785 (7th Cir. 2016) (savings clause unavailable for claim petitioner could have raised in his initial § 2255 motion).

Despite the earlier opportunity to present the defective indictment claim, Mr. Paul argues that he must be allowed to present it here because the defective indictment deprived the district court of jurisdiction to convict and sentence him. Dkt. 234 at 6–7. But the Supreme Court has explained that "defects in an indictment do not deprive a court of its power to adjudicate a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (rejecting the proposition "that a defective indictment deprives a court of jurisdiction"). And the Seventh Circuit has endorsed a broad reading of *Cotton*'s rule: "defects in an indictment do not deprive the court of subject-matter jurisdiction, and this is so even when the defect is a failure to state a federal offense." *United States v. Muresanu*, 951 F.3d 833, 837–39 (7th Cir. 2020) (district court had jurisdiction despite defective indictment charging defendant with the "noncrime" of "attempted aggravated identity theft").

Because the allegedly defective indictment did not deprive the district court of jurisdiction and because Mr. Paul has no other basis to invoke the savings clause for this claim, it is barred by § 2255(e).

### 2. Whether the "Robbery" Offense Underlying Mr. Paul's § 924(c) Conviction Is a Crime of Violence

Finally, Mr. Paul argues that his 18 U.S.C. § 924(c) conviction must be vacated because the "robbery" offense underlying his conviction is not a crime of violence under § 924(c)(3)(A).

Mr. Paul argues that he may bring this claim in a § 2241 petition under the § 2255(e) exception outlined in *Davenport*. To satisfy the *Davenport* exception, Mr. Paul must show "(1) the claim relies on a new statutory interpretation case; (2) the petitioner could not have invoked the decision in his first § 2255 motion and the decision applies retroactively; and (3) there has been a fundamental defect in the proceedings that is fairly characterized as a miscarriage of justice." *Montana v. Cross*, 829 F.3d 775, 779 (7th Cir. 2016) (emphasis omitted).

The government does not dispute the first and second *Davenport* factors, and rightly so. Mr. Paul's claim satisfies the first factor, as his claim is based on a new case of statutory interpretation: *Borden v. United States*, 141 S. Ct. 1817 (2021). It also satisfies the second factor. Mr. Paul could not have invoked *Borden* in his first § 2255 motion, which was decided long before *Borden* was issued. *See Paul II*, 534 F.3d 832. And *Borden*'s holding "altered 'the range of conduct or the class of persons that the law punishes,'" so it is a substantive rule that applies retroactively on collateral review. *Welch v. United States*, 578 U.S. 120, 135 (2016) (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)); *see also Price v. United States*, 795 F.3d 731, 734 (7th Cir. 2015) (when the Supreme Court announces a new substantive rule, it logically follows that the Supreme Court has made the rule retroactive).

The government disputes only the third *Davenport* factor: whether there has been a fundamental defect in the proceedings that constitutes a miscarriage of justice. This factor requires a thorough discussion, beginning with *Borden*.

In *Borden*, the Supreme Court held that the phrase "violent felony" as defined in 18 U.S.C. § 924(e)(2)(B)(i) includes only offenses with a *mens rea* requirement of purpose or knowledge as to the violent *actus reus*. 141 S. Ct. at 1828; *id.* at 1935 (Thomas, J., concurring). Mr. Paul asserts, and the government does not dispute, that *Borden*'s holding applies to § 924(c)(3)(A)'s definition of "crime of violence." Indeed, the two provisions are nearly identical, and none of the differences would indicate that § 924(c)(3)(A) includes reckless conduct while § 924(e)(2)(B)(i) does not. *Compare* 18 U.S.C. § 924(c)(3)(A) ("crime of violence" is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another"), *with* § 924(e)(2)(B)(i) ("violent felony" is a crime punishable by more than one year of imprisonment

13

that "has as an element the use, attempted use, or threatened use of physical force against the person of another").

The question, then, is whether the robbery charged as a predicate to Mr. Paul's § 924(c) conviction includes a *mens rea* of recklessness or instead requires purpose or knowledge. Ordinarily, this analysis would begin with a statutory offense. But as discussed above, Mr. Paul's indictment and jury instructions did not reference—or include the elements of—any statutory offense as a predicate for his § 924(c) charge.

The government again asserts that the predicate offense is 28 U.S.C. § 2111, which provides that a person commits robbery when, "within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, [the person] takes or attempts to take from the person or presence of another anything of value." But the indictment does not cite to § 2111; nor does it include any reference to force, violence, or intimidation. Dkt. 272-1. The jury instructions get a bit closer, instructing, as relevant here, that Mr. Paul committed robbery if he "took and carried away anything of value from Sherman Williams by force or violence." Dkt. 272-2 at 11; Trial Tr. 845. Regardless, nothing in the indictment or the jury instructions indicates that Mr. Paul needed to *knowingly* use force or violence to commit robbery.

No matter, according to the government. They point to *Carter v. United States*, where the Supreme Court held that § 2113(a)—which includes the same "by force and violence, or by intimidation" language as § 2111— "[requires] proof of *general intent*—that is, that the defendant possessed knowledge with respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation)." 530 U.S. 255, 268 (2000).

14

This argument has two flaws. First, as already discussed, Mr. Paul was not charged with an offense criminalized by statute, including § 2111. Second, the Eighth Circuit,[5] even after *Carter*, has expressly held that § 2113(a)'s implied knowing *mens rea* applies only to the "taking of property of another" element of the crime. *United States v. Yockel*, 320 F.3d 818, 820−21 (8th Cir. 2003); *see United States v. Ellison*, 866 F.3d 32, 39 (1st Cir. 2017) (declining to follow *Yockel* but noting that the Eighth Circuit is one of "two circuits, post-*Carter*, [that] have continued to state that the government need not show that the defendant knew that his actions would be intimidating in order to secure a conviction under § 2113(a)").

In *Yockel*, the defendant was convicted of bank robbery based on intimidation. He argued on appeal that the government had failed to show knowing intimidation. 320 F.3d at 823 ("The contrary position Yockel assumes is that the government had to prove he knowingly intimidated the teller in order to have been convicted."). The Eighth Circuit rejected this argument, agreeing with the government that "the *mens rea* for the *actus reus* of bank robbery is satisfied by proof that Yockel knew he was physically taking money." *Id.*; *see id.* at 824 ("The district court correctly concluded the *mens rea* element of bank robbery did not apply to the element of intimidation.").

In short, neither Mr. Paul's indictment nor his jury instructions required a showing that he knowingly used force during the course of a robbery. And in the circuit where Mr. Paul was convicted, the *mens rea* of knowledge did not apply to the force and violence elements of § 2111 robbery, which is the statutory robbery offense most resembling the conduct with which he was

---

[5] The government argues that the Court should apply Eighth Circuit substantive law in this action, as that is where Mr. Paul was convicted. Dkt. 272 at 5 (citing *Chazen v. Marske*, 938 F.3d 851, 864−65 (7th Cir. 2019) (Barrett, J., concurring)). And when the dispute is over the elements of the crime for which a petitioner was convicted, it makes good sense to apply the law of the circuit of conviction.

charged. For these reasons, the robbery underlying Mr. Paul's § 924(c) conviction did not require a knowing use of force, so it was not a crime of violence under *Borden*. And conviction of an offense that is not actually criminalized constitutes a fundamental defect and a miscarriage of justice. *See United States v. Castano*, 543 F.3d 826, 837 (6th Cir. 2008) ("[T]here is significant doubt that the jury convicted Castano of an offense that § 924(c) criminalizes. Indeed, the errors in this case were 'clearly erroneous' and were such that could 'likely produce a grave a miscarriage of justice.'").

## IV.    Remedy

Because Mr. Paul's § 924(c) conviction is predicated on an offense that is not criminalized by statute, the conviction is **VACATED**.

The parties dispute whether Mr. Paul's death sentence also should be vacated. The government argues that the Court has "'broad and flexible power in correcting invalid convictions and sentences.'" Dkt. 272 at 14 (quoting *Gardiner v. United States*, 114 F.3d 734, 736 (8th Cir. 1997)); *see* 28 U.S.C. § 2255(b) ("[T]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."). But "a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground." *Zant v. Stephens*, 462 U.S. 862, 881 (1983); *see United States v. Causey*, 185 F.3d 407, 423 (5th Cir. 1999) (vacating death sentence and ordering resentencing after vacating one of three death-eligible convictions).

Here, the jury was not asked to specify the offense or offenses for which it imposed the death penalty. Without such information, the Court cannot determine whether Mr. Paul's § 924(c)

16

conviction influenced his sentence. Mr. Paul's death sentence is therefore **VACATED**, subject to retrial on the penalty phase in the district of conviction.

### V.     Conclusion

Mr. Paul's petition for writ of habeas corpus is **GRANTED**. Mr. Paul's conviction pursuant to 18 U.S.C. § 924(c) is **VACATED**. His death sentence is **VACATED**, subject to a retrial on the penalty phase in the United States District Court for the Western District of Arkansas.

**IT IS SO ORDERED.**

Date: 8/2/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Jeffrey Bradford Kahan
U.S. DEPARTMENT OF JUSTICE
jeffrey.kahan@usdoj.gov

Shawn Nolan
FEDERAL COMMUNITY DEFENDER OFFICE
shawn_nolan@fd.org

Winfield D. Ong
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
winfield.ong@usdoj.gov

Leigh Skipper
FEDERAL COMMUNITY DEFENDER
leigh_skipper@fd.org

Peter Konrad Williams
Federal Community Defender Office
pete_williams@fd.org

Jeffrey Alan Zick
UNITED STATES DEPARTMENT OF JUSTICE
jeffrey.zick@usdoj.gov

Billy H. Nolas
Federal Community Defender
601 Walnut Street
Suite 545 West
Philadelphia, PA 19106